# NO. 20-40585

United States Court of Appeals
for the Fifth Circuit

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellee*,

**v.**

**COLLIN GARRETT HAYDEN,**

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Eastern District of Texas,
Texarkana Division, No. 5:17-CR-9-RWS-CMC-6

## BRIEF FOR APPELLEE UNITED STATES OF AMERICA

NICHOLAS J. GANJEI
Acting United States Attorney
Eastern District of Texas

JONATHAN R. HORNOK
Assistant United States Attorney
500 State Line Ave. N., Suite 420
Texarkana, Texas 75504
(903) 792-8453

**ATTORNEYS FOR THE**
**UNITED STATES OF AMERICA**

## DISCLOSURE STATEMENT

As required by a 2019 amendment to the FEDERAL RULES OF APPELLATE PROCEDURE, the government notes that there were no organizational victims of the defendant's criminal activity. FED. R. APP. P. 26.1(b).

## STATEMENT REGARDING ORAL ARGUMENT

In the government's view, oral argument is unnecessary because the facts and legal arguments are adequately presented in the briefs and record. FED. R. APP. P. 34(a)(2)(C).

# TABLE OF CONTENTS


DISCLOSURE STATEMENT ........ i

STATEMENT REGARDING ORAL ARGUMENT ........ ii

TABLE OF CONTENTS ........ iii

TABLE OF AUTHORITIES ........ v

JURISDICTIONAL STATEMENT ........ 1

STATEMENT OF THE ISSUES ........ 2

**1.Whether the district court plainly erred by applying the constitutionally appropriate venue provision in 18 U.S.C. § 1512(i).** ........ 15

**2.Whether this Court should defer to the district court's conclusion that Hayden did not accept responsibility** ........ 15

STATEMENT OF THE CASE ........ 3

SUMMARY OF ARGUMENT ........ 15

ARGUMENT ........ 16

**I. Venue for the 18 U.S.C. § 1512 conviction was proper in the Eastern District of Texas.** ........ 16

**A. Background.** ........ 16

**B. Standard Review.** ........ 17

**C. 18 U.S.C. § 1512(i) is constitutional.** ........ 19

**D. There was sufficient evidence to establish that Hayden intended to affect the Eastern District of Texas.** ........ 23

**II. Hayden did not accept responsibility and was thus not entitled to a reduction** ........ 27

**A. Background and Standard Review**. .............................. 27

**B. Hayden failed to admit all the elements of the offense.** ........................................................................ 28

**C. Hayden's conduct demonstrated that he had not accepted responsibility.** .................................................. 30

**CONCLUSION** ........................................................................... 35

**CERTIFICATE OF SERVICE** ........................................................ 36

**CERTIFICATE OF COMPLIANCE** ................................................ 37

# TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

*Puckett v. United States*,
556 U.S. 129 (2009) .......... 19

*Travis v. United States*,
364 U.S. 631 (1961) .......... 19, 20

*United States v. Andaverde-Tinoco*,
741 F.3d 509 (5th Cir. 2013) .......... 19

*United States v. Baldeo*,
615 F. App'x 26 (2d Cir. 2015) .......... 22, 27

*United States v. Cabrera*,
288 F.3d 163 (5th Cir. 2002) .......... 27

*United States v. Causey*,
185 F.3d 407 (5th Cir. 1999) .......... 22

*United States v. Cofield*,
11 F.3d 413 (4th Cir. 1993) .......... 21

*United States v. Compian-Torres*,
712 F.3d 203 (5th Cir. 2013) .......... 25

*United States v. Davis*,
689 F.3d 179 (2d Cir. 2012) .......... 21

*United States v. Gonzalez*,
922 F.2d 1044 (2d Cir. 1991) .......... 20

*United States v. Herrera*,
313 F.3d 882 (5th Cir. 2002) .......... 18

*United States v. Johnson*,
943 F.3d 214 (5th Cir. 2019) .......... 18

*United States v. Ochoa*,
521 F. App'x 328 (5th Cir. 2013) .......... 29

*United States v. O'Donnell*,
510 F.2d 1190 (6th Cir. 1975) .......... 21

*United States v. Ragsdale*,
426 F.3d 765 (5th Cir. 2005) .......... 28

*United States v. Reed*,
773 F.2d 477 (2d Cir. 1985) .......... 20, 21

*United States v. Reed*,
908 F.3d 102 (5th Cir. 2018) .......... 18, 24

*United States v. Reed*,
974 F.3d 560 (5th Cir. 2020) .......... 19

*United States v. Richardson*,
676 F.3d 491 (5th Cir. 2012) .......... 22

*United States v. Rodriguez-Moreno*,
526 U.S. 275 (1999) .......... 21, 24

*United States v. Sanjar*,
876 F.3d 725 (5th Cir. 2017) .......... 19

*United States v. Scott*,
892 F.3d 791 (5th Cir. 2018) .......... 4

*United States v. Smith*,
13 F.3d 860 (5th Cir. 1994) .......... 29

### Federal Statutes and Rules

8 U.S.C. § 1326 .......... 25

18 U.S.C. § 924(c)(1) .......... 21, 24

18 U.S.C. § 924(c)(1)(A) .......... 3

18 U.S.C. § 1503 .......... 3, 20, 21, 22

18 U.S.C. § 1512 .......... 16, 20, 22

18 U.S.C. § 1512(a)(2)(A) .......... 1, 3

18 U.S.C. § 1512(a)(3)(C) .......... 1, 3

18 U.S.C. § 1512(f)(1) .......... 22

18 U.S.C. § 1512(i) .......... *passim*

18 U.S.C. § 1512(j) .......... 14

18 U.S.C. § 1791(a)(2) .......... 1, 3

18 U.S.C. § 1791(b)(3) .......... 1, 3

18 U.S.C. § 3231 .......... 1

18 U.S.C. § 3237 .......... 20

18 U.S.C. § 3742(a) .......... 1

21 U.S.C. § 846 .......... 3

28 U.S.C. § 1291 .......... 1

FED. R. APP. P. 26.1(b) .......... i

FED. R. APP. P. 32(a)(7)(B) .......... 37

FED. R. APP. P. 32(f) .......... 37

FED. R. APP. P. 32(g) .......... 37

FED. R. APP. P. 34(a)(2)(C) .......... ii

Fed. R. Crim. P. 12(b)(3)(A)(i) .......... 17

**Other Authorities**

U.S. Const. Art. III § 2 .......... 19

U.S. Const. Amend. VI .......... 19

U.S.S.G. § 3E1.1(a) .......... 27

U.S.S.G. § 3E1.1 .......... 28, 29, 30, 31, 32

U.S.S.G. § 3C1.1 .......... 33

## JURISDICTIONAL STATEMENT

Collin Hayden pleaded guilty on the first day of trial to possessing contraband in jail, in violation of 18 U.S.C. § 1791(a)(2) and (b)(3). ROA.4306. After a five-day trial, the jury convicted Hayden of obstruction of justice, in violation of 18 U.S.C. § 1512(a)(2)(A) and (a)(3)(C). ROA.4306, 304. The district court (Schroeder, J.) sentenced him to a total of 180 months in prison to be followed by three years of supervised release. ROA.370–372. Hayden timely appeals his conviction and sentence. ROA.377. The district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court plainly erred by applying the constitutionally appropriate venue provision in 18 U.S.C. § 1512(i).

2. Whether this Court should defer to the district court's conclusion that Hayden did not accept responsibility.

## STATEMENT OF THE CASE

In a second superseding indictment, a grand jury in the Eastern District of Texas charged Collin Hayden with conspiring to possess with intent to distribute, and to distribute, cocaine and methamphetamine, in violation of 21 U.S.C. § 846 (Count One); using or carrying a firearm during and in relation to, or possessing a firearm in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two); obstruction of justice, in violation of 18 U.S.C. § 1512(a)(2)(A) and (a)(3)(C) (Count Four); and possession of contraband in jail, in violation of 18 U.S.C. § 1791(a)(2) and (b)(3) (Count Five).[1] ROA.4306. On the first day of trial, Hayden pleaded guilty to Count Five and not guilty to Counts One, Two, and Four. ROA.750, 779, 4306. During the five-day trial, the government called fifteen witnesses, ROA.561–64, and presented sixty marked exhibits, consisting of bulk digital records, drugs, guns, other physical exhibits, photographs, videos, and summaries, ROA.2566–68. Hayden testified in his defense, but did not present any additional witnesses or exhibits. ROA.564. Taken in the light most favorable to the

[1] Hayden was also charged with obstruction of justice, in violation of 18 U.S.C. § 1503 (Count Three); the government abandoned this count before trial. ROA.4306.

verdict, *United States v. Scott*, 892 F.3d 791, 800 (5th Cir. 2018), and adopted by the district court in the PSR, the evidence showed the following:

*Paul Brown bought drugs at the Dallas apartment shared by Collin Hayden and Timothy Harper.*

In the fall of 2016, Texas DPS Special Agent Daniel Kelly started investigating a methamphetamine dealer in the Eastern District of Texas. ROA.816, 4307. His investigation quickly revealed that Paul Brown was buying methamphetamine from Jason McLemore in Dallas, Texas, and distributing it in the Eastern District of Texas. ROA.817, 4307. When Kelly approached Brown in January 2017, Brown agreed to cooperate in the investigation. ROA.819.

On January 23, 2017, Brown—under Kelly's direction—knocked on the door of what had been McLemore's apartment in Dallas, Texas. ROA.823, 4307. Instead of finding McLemore, Hayden and his roommate, Timothy Harper, answered the door. ROA.823, 4307. A few days later, Brown went back to the apartment and bought methamphetamine from Harper. ROA.823, 4307. Then on February 9, 2017, Brown went back to the apartment to purchase a kilogram of methamphetamine from

Harper. ROA.824, 4307. When Brown knocked on the door, Hayden answered because Harper was asleep. ROA.828–29, 2188–92, 4307. When Brown told Hayden that he was there to purchase a kilogram of methamphetamine, Hayden offered to sell Brown six ounces. ROA.2189–90, 4307.[2] Brown insisted on buying a kilogram, so Hayden asked Brown to show him the money. ROA.2190–91, 4307. Hayden followed Brown to the parking lot, where an undercover officer was waiting with a $20,000.00 flash role of currency.[3] ROA.829, 831, 2191, 4307. After he saw the money, Hayden woke up Harper and told him Brown was waiting in the parking lot. ROA.829, 2191–92, 4307.

Later that day, after Harper told Brown that the kilogram of methamphetamine was ready, the Dallas Police Department SWAT team executed a search warrant at Hayden and Harper's apartment. ROA.831, 4307. Inside, officers found Harper, his supplier Daniel Montes-Munoz, and several others with a kilogram of methamphetamine on the kitchen

[2] At trial, Hayden said he knew that Harper was a drug dealer. ROA.2194.

[3] At trial, Hayden said he was not trying to verify funds for Harper but was instead planning to rob Brown and the undercover officer so he could take his brother to play laser tag. ROA.2190, 4307.

counter. ROA.831–32, 1809, 4307. Hayden was gone. ROA.831–32, 4307. But inside Hayden's bedroom, agents found methamphetamine, cocaine, and marijuana. ROA.2192–94, 4307. Agents also found cups of methamphetamine in Hayden's bedroom; Hayden's fingerprints were on the cups. ROA.2194, 4307.

*Hayden was buying drugs from McLemore and Montes-Munoz, and he was selling drugs through the Eastern District of Texas.*

In addition to selling methamphetamine to Brown, McLemore regularly sold cocaine and methamphetamine to Hayden. ROA.1021–25. Hayden was buying two to three ounces of cocaine from McLemore each week and selling it at the strips clubs where he was working. ROA.1021–24, 1808–09. Hayden also purchased more than half a pound of methamphetamine from McLemore. ROA.1025.

Hayden also purchased cocaine from Montes-Munoz, who was Harper's methamphetamine supplier. ROA.1809. Hayden purchased cocaine from Montes-Munoz on multiple occasions. ROA.1809.

Hayden grew up in Shreveport, Louisiana. ROA.2202. Hayden and Harper partnered with each other to supply methamphetamine to buyers Hayden knew from Shreveport. ROA.1805–07. Once or twice a week for

three months, the buyers travelled from Shreveport to Dallas and back to buy drugs from Hayden and Harper. ROA.1805–07. Interstate 20—which passes through the Eastern District of Texas—is the natural route from Dallas to Shreveport and back. ROA.1805–07.

*Hayden threatened to kill Harper when he learned the feds were looking for him in the Eastern District of Texas.*

A few months later, in early April 2017, Agent Kelly attempted to locate Hayden at Hayden's father's residence in Atlanta, Texas, which is in the Eastern District of Texas. ROA.840–41, 2203, 4307. Hayden was not there, but Kelly was able to call him with a phone number he received from Hayden's family. ROA.841, 4307. Kelly told Hayden that he wanted to speak with him. ROA.841. Hayden said he was going to flee to Cuba to avoid arrest. ROA.841, 4307.

Using his Facebook account under his stripper name, Justin Givenchy,[4] Hayden started looking for Harper. ROA.2206, 2242–44, 2721–28, 4308–09. On April 5, 2017, Hayden had the following

[4] Hayden was a male stripper who worked at Hunk's Mansion Male Strip Club and LaBare Dallas. ROA.2205.

conversation—his words appear on the left in red—with Reva Dena, who was a mutual friend of Hayden and Harper:[5]

**Justin Givenchy Facebook: Conversation with Reva Dena**

5-Apr-2017

Where is Tim at I gotta get rid of him

I will pay 2000 to find him

He aint at my house no more idk

Bitchass nigga put the people in my life now the feds hunting me

I want him

I kicked them out monday

Sent a photo of these messages from Jeff Hayden: "What's going on, there was 2 state police and 1 sheriff here saying they had a federal indictment to place you into custody for methamphetamine and searched all out here for you, they said it would be easier on you to come on in. What the [h**l] is going on bud ???" "Said they had seized a kilo of meth from your apartment in Dallas. This have anything to do with that other dude they arrested and maybe he said it was yours when you was not there ???"

Famnit im sorry

ROA.2242, 2722–23, 4308. The next day, Hayden sent this message to Timothy Harper's girlfriend, Christine Caldwell:

[5] The three performed together in December 2016 at Nightclub Connect's Jingle Balls event. ROA.2575.

## Justin Givenchy's Facebook: Conversation with Christine Caldwell

6-Apr-2017

I will pay 2000 dollars for the location of tim

ROA.2242, 2724, 4308. This was just one of "multiple occasions" Hayden offered money to find Harper. ROA.2242. Two days later, Hayden posted this:

## Collin Hayden's Facebook

- Meme posted as Status Update on 8-Apr-2017:
- 8-Apr-2017: "Paying 2000$ cash for the location of Christine Caldwell and Timothy Harper if anybody knows anything I will pay cash upon delivery"




ROA.2242–43, 2725, 4308. Finally, on April 9, 2017, Hayden sent this message to Harper via his Facebook account under Harper's stripper name, Cameron Diggs:

Justin Givenchy's Facebook:
Conversation with Cameron Diggs

9-Apr-2017

Bitchass nigga ima find you i got 200p for your location wanna throw me under the bus we gunna see last one standing. Yea your little bitchass detectice guy texted me told me everything you said how u puttin it all off on me

2000 bones

ROA.2726, 4309. When asked on the stand whether Hayden had written this message to Harper, Hayden responded this way:

> I did. And every day of my life the hate grows in my heart for a crime I did not commit. The hate grows in my heart every single day I have to sit in here . . . because of somebody else. So, of course, I was mad. Of course I might have wanted to fight the guy, but I never said, "Oh, yeah, I'm gonna to kill you." I never went into any kind of details, "I'm going to go send somebody after you." I never did none of that. I just wanted him to know that, "Hey, man, you betrayed me. You weren't man enough to take your charge, and now I have to pay for your consequences."

ROA.2243. When asked what he expected to do if he found Harper, Hayden said this:

> Really, nothing at the time. I just wanted him to know what I thought about him, what I thought about the whole situation, what I thought about him ruining my life.

ROA.2243.

But while in jail on pretrial detention, Hayden described on a recorded jail call that he was planning to get Harper's "wig split" and tattoos burned off by spreading information about Harper to other gang members while in prison. ROA.2243, 4309. Hayden even mused that Harper might die before he got out. ROA.4309.

*Hayden was caught in south Florida, where he had been trying to sell drugs.*

After Hayden told Kelly that he was fleeing to Cuba, Hayden went to south Florida. ROA.2199, 2730. In early May, he attempted to sell Xanax and cocaine over Facebook:

Collin Hayden's Facebook:
Conversation with Skye Beckett

8-May-2017

I need to get rid of coke and Xanax I have 300 Xanax and 26 grams of coke I need it gone im selling cheap

How cheap

I know people

Prolly 800 for all i need the cash

Individual

My friend said what will u do for 250

Ha theys crazy an ounce of coke and 300 Xanax for 250

ROA.2059, 2199–2200, 2732. A month and a half later, Hayden was arrested in possession of Xanax pills, scales, and empty baggies. ROA.4308. After serving jail time in Florida and then Louisiana, he was transferred to the Eastern District of Texas for prosecution in this case. ROA.4308, 4322.

*Hayden threatened to kill jail staff with a bolt.*

While awaiting trial, Hayden was detained in the Titus County jail. ROA.4309. In December 2019—just two and a half months before trial—Hayden paid someone $230.00 to help him smuggle two cell phones into the jail. ROA.4310. After the plot was discovered and Hayden was moved to an isolation cell, he wrapped himself in a blanket and covered his face

with a shirt. ROA.735, 4310. He then extracted an 8.5-inch bolt, like the one pictured below, from the cage over the smoke detector:



ROA.306–09, 735, 4310. Hayden threatened to kill jail staff, intending to use the bolt as a weapon. ROA.737. When asked why he was upset, Hayden said he was mad because an officer had "snitched" on him. ROA.4310.

* * *

On the first day of trial, Hayden pleaded guilty to the jail contraband offense charged in Count Five. ROA.4306. After five days of trial, the jury found Hayden not guilty on the drug conspiracy charge in Count One and the firearms charge in Count Two. ROA.302–03, 4306. The jury found Hayden guilty on the obstruction-of-justice charge in

Count Four. ROA.304. The jury also found that "the official proceeding was a trial of a criminal case." ROA.304; *see* 18 U.S.C. § 1512(j).

The district court sentenced Hayden to a total of 180 months in prison—180 months on Count Four and a concurrent 60 months on Count Five—to be followed by three years of supervised release. ROA.370–372.[6]

[6] The district court first sentenced Hayden to 200 months in prison. ROA.353–54. After discovering an error in the guideline calculation, ROA.362, 2528, the district court lowered Hayden's sentence to 180 months in prison. ROA.370–71.

## SUMMARY OF ARGUMENT

1. The district court did not plainly err by applying the constitutionally appropriate venue provision in 18 U.S.C. § 1512(i). Hayden raises his constitutional challenge for the first time on appeal. But the Supreme Court has held that Congress's role in defining the nature of an offense includes the power to define venue. Accordingly, the courts of appeals that have considered subsection (i) have applied it precisely as the district court did here. Additionally, based on the elements of the obstruction offense—which Hayden approved at trial—the jury necessarily found that at the time Hayden obstructed justice he did so with the intent to affect this case in Eastern District of Texas—a conclusion strongly supported by the evidence presented at trial.

2. This Court should defer to the district court's conclusion that Hayden did not accept responsibility. As he rightly concedes, Hayden failed to admit that he had the intent required by the elements of the obstruction offense. Moreover, Hayden demonstrated that he did not accept responsibility by fleeing from law enforcement, committing new offenses while in pretrial custody, lying to the government, and committing perjury at trial.

# ARGUMENT

Hayden claims (I) that the Eastern District of Texas did not have venue for his 18 U.S.C. § 1512 conviction and (II) that the court erroneously denied his request for an acceptance-of-responsibility reduction. These claims lack merit.

## I. VENUE FOR THE 18 U.S.C. § 1512 CONVICTION WAS PROPER IN THE EASTERN DISTRICT OF TEXAS.

### A. Background

Hayden argues that the Eastern District of Texas did not have venue for his 18 U.S.C. § 1512 conviction. Hayden concedes that "[v]enue was . . . appropriate pursuant to 18 [U.S.C. §] 1512(i)" based on the "underlying criminal case," but he argues that this venue provision is constitutionally defective. Br.21, 37. In advancing this constitutional challenge, he frames the same argument in two ways: first as a claim of insufficient evidence, Br.21, and second as an as-applied constitutional challenge to 18 U.S.C. § 1512(i), Br.27. The sum and substance of Hayden's arguments is the same: this Court should disregard 18 U.S.C. § 1512(i) and instead find that venue was proper in only the districts where the obstructive threat was made and received. Hayden makes this argument for the first time on appeal.

## B. Standard of Review

Hayden concedes that he did not preserve his constitutional argument and that it must therefore be reviewed for plain error. Br.37–38. But he argues that because he challenged the sufficiency of the evidence below, this Court should review his legal argument de novo. Br.21–24. Regardless of the standard of review that this Court applies, Hayden's argument fails because it is without legal merit.

In any event, Hayden did not object to 18 U.S.C. § 1512(i) in the district court. His attempt to challenge that provision on appeal is therefore untimely or at best subject to plain-error review. First, rule 12(b)(3)(A)(i) of the FEDERAL RULES OF CRIMINAL PROCEDURE provides that any claim of "improper venue" "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Because Hayden's legal challenge to subsection (i) was "reasonably available" to him before trial, his attempt to advance that argument for the first time on appeal is untimely.

Second, in order to preserve an argument for appeal a defendant must object in the district court in a way that is "sufficiently specific to

alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Johnson*, 943 F.3d 214, 221 (5th Cir. 2019) (quotation omitted). Indeed, a "defendant's objection must be on the specific grounds he raises on appeal." *Id.* (quotation and alteration omitted). Anything outside of the specific grounds raised in the district court are unpreserved and reviewed for plain error. *United States v. Herrera*, 313 F.3d 882, 884 (5th Cir. 2002) (en banc).

Here, Hayden only argued that "there was no testimony about where the threat was made or the threat was received and no testimony linking it to the Eastern District of Texas." ROA.2143–44. Hayden's venue argument ended there.[7] The government responded by reading 18 U.S.C. § 1512(i). ROA.2144 (quoting 18 U.S.C. § 1512(i)). When the court gave Hayden an opportunity to argue that subsection (i) was inconsistent with the constitutional standard, he failed to do so. Instead, he concluded, "that's all I have on the venue issue." ROA.2155. Hayden

[7] Hayden also made a very brief "global[]" challenge to the sufficiency of the evidence, concluding his argument with the following: "Then globally with regard to all of the counts, defendant respectfully alleges that's there's insufficient evidence to sustain a conviction as to each of the enumerated charges. Thank you." ROA.2144. Hayden has forfeited this challenge on appeal. *See United States v. Reed*, 908 F.3d 102, 123 (5th Cir. 2018).

accordingly failed to preserve the objection to subsection (i) that he advances for the first time on appeal. His challenge is therefore subject to the "demanding requirements" of plain-error review. *United States v. Sanjar*, 876 F.3d 725, 749 (5th Cir. 2017); *Puckett v. United States*, 556 U.S. 129, 135 (2009) (describing the four prong test for plain-error review).[8]

### C. 18 U.S.C. § 1512(i) is constitutional.

Article III of the Constitution provides that criminal trials "shall be held in the State where the said Crimes shall have been committed." U.S. Const. Art. III § 2. The Sixth Amendment goes further, requiring that defendants by tried before "an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. Amend. VI.

These constitutional requirements are directed to the locality of the offense, not the personal presence of the defendant. *Travis v. United States*, 364 U.S. 631, 634 (1961). And because Congress defines offenses,

[8] Hayden has not asserted—much less satisfied his burden to show—that the second through fourth prongs of the plain error standard have been met. That failure is fatal to Hayden's challenge because he carries the burden of demonstrating that all four prongs are satisfied. *E.g.*, *United States v. Reed*, 974 F.3d 560, 563 (5th Cir. 2020); *United States v. Andaverde-Tinoco*, 741 F.3d 509, 521–23 (5th Cir. 2013).

it necessarily defines their locality. *Id.* For example, if Congress defines a continuing offense, then venue is proper wherever the wrongdoer roamed until the offense was complete. *Id.*; *see also* 18 U.S.C. § 3237. "Where Congress is not explicit, the locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *Travis*, 364 U.S. at 635.

In the case of violations of 18 U.S.C. § 1512, Congress was explicit. Section 1512 was originally enacted without the venue provision. *United States v. Gonzalez*, 922 F.2d 1044, 1054 (2d Cir. 1991). A circuit split emerged regarding where proper venue was laid under section 1512 and its older sibling, section 1503. Some circuits found venue only where the obstructive acts were committed; others found venue where the official proceeding was affected. *Id.* Congress enacted subsection (i)[9] to settle the matter, siding with the First, Fourth, Sixth, and Eleventh Circuits. *United States v. Reed*, 773 F.2d 477, 484 (2d Cir. 1985). As Senator Kennedy explained, under subsection (i) if a witness scheduled to testify at a trial in one district were killed in another, the prosecution could take place in either district. *Id.* at 1054–55. The courts to consider subsection

[9] Subsection (i) was previously codified as subsection (h).

(i) have interpreted its language precisely as Senator Kennedy intended.[10] For example, the Second Circuit, on the basis of subsection (i), held that "venue under § 1503 is proper in the district in which the proceeding sought to be obstructed is pending even though the would-be obstructive acts took place elsewhere." *Id.* at 486. The Fourth Circuit agrees. *United States v. Cofield*, 11 F.3d 413, 416 (4th Cir. 1993).

Hayden concedes that the effects of his obstructive acts confer venue.[11] Indeed, he acknowledges that the Sixth Circuit has "specifically concluded that venue is appropriate for obstruction of justice where the obstruction was intended. Br.34 (citing *United States v. O'Donnell*, 510 F.2d 1190, 1191 (6th Cir. 1975)).[12] Hayden also relies on *United States v. Davis*, 689 F.3d 179 (2d Cir. 2012), in which the Second Circuit noted that for obstruction of justice "the law recognizes venue both in a district where a defendant commits an act and in the district where the

---

[10] This Court does not appear to have considered this precise issue.

[11] Hayden argues that "any effect resulting" from his acts failed to reach the Eastern District of Texas. Br.30.

[12] Hayden also cites *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 n.2 (1999), which deals with venue for a conviction under 18 U.S.C. § 924(c)(1). *Id.* at 279. By its own terms, *Rodriguez-Moreno* "express[es] no opinion" on the question at hand.

act has an effect." *Id.* 187 n.3 (citing 18 U.S.C. § 1512(i)). Hayden attempts to differentiate this case from the ones he cites because the proceeding in this case was not pending at the time he threatened Harper.[13] But the Second Circuit has not recognized that distinction. In *United States v. Baldeo*, 615 F. App'x 26 (2d Cir. 2015) (unpublished), *cert. denied*, 136 S.Ct. 1393 (2016), the defendant challenged the sufficiency of the evidence supporting venue for his conviction under 18 U.S.C. § 1512. *Id.* at 27. Relying on the text of subsection (i), the Second Circuit concluded that venue was proper in the Southern District of New York—where the official proceedings were anticipated—because "the government presented evidence that Baldeo sought to impede grand jury proceedings that were *subsequently* instituted in the Southern District of New York by attempting to prevent potential witnesses from communicating with FBI agents from that district about suspected

[13] This is a distinction between 18 U.S.C. § 1503—which requires a pending proceeding—and 18 U.S.C. § 1512—which does not. *Compare United States v. Richardson*, 676 F.3d 491, 502 (5th Cir. 2012) (holding that section 1503 requires a pending proceeding), *with United States v. Causey*, 185 F.3d 407, 421–22 (5th Cir. 1999) (quoting 18 U.S.C. § 1512(f)(1)—formerly subsection (e)(1)—and holding that section 1512 does not require a pending proceeding).

federal fraud offenses committed within their jurisdiction." *Id.* (emphasis added).

**D. There was sufficient evidence to establish that Hayden intended to affect the Eastern District of Texas.**

In claiming that there was insufficient evidence to support venue in the Eastern District of Texas, Hayden attempts to narrow the effects of his obstruction to only the districts in which the threatened individual—Harper—was physically located or a proceeding was pending at the time of the threat. This argument—indeed, all of his venue arguments—is founded on a misapprehension of the nature of the obstruction offense and the intent and knowledge required.

The district court, without objection from Hayden, ROA.2273–74, instructed the jury that in order to find Hayden guilty it had to be convinced of the following:

> Second: That the defendant acted *with intent* to influence, delay or prevent the testimony of Timothy Harper *in this case*, an official proceeding.
>
> Third: That the defendant *knew or should have known that this case* was pending or *was likely to be instituted*;

> however, the government does not need to prove that an official proceeding was actually pending or about to be instituted at the time of the alleged offense . . . .

ROA.2297–98 (emphasis added). Based on this instruction, the jury necessarily found[14] that Hayden had "acted with intent" to affect "this case." ROA.2297–98. Additionally, the jury necessarily found that Hayden "knew or should have known that this case . . . was likely to be instituted," regardless of whether it actually was. ROA.2297–98. By developing an intent to affect this case—with knowledge that it was about to be instituted—Hayden subjected himself to the courts with venue for this case. *Cf. United States v. Rodriguez-Moreno*, 526 U.S. 275, 281–82 (1999) (holding that venue for a violation of 18 U.S.C. § 924(c)(1) follows the venue of the predicate offense).

---

[14] On appeal, Hayden has only challenged the sufficiency of the evidence with respect to venue. He has not challenged the sufficiency of the evidence with respect to the other elements of the offense. This Court has held that the "failure to adequately brief [a sufficiency-of-the-evidence] argument in the opening brief waives the issue on appeal." *United States v. Reed*, 908 F.3d 102, 123 (5th Cir. 2018). Hayden has thus waived any argument that the evidence was insufficient to support the jury's conclusion that Hayden developed the required mens rea.

Hayden next argues that the government's subsequent filing of this case in the Eastern District of Texas cannot confer venue for the obstruction offense. Br.32. This Court need not determine whether the subsequent acts of the government can affect the venue analysis under this statute.[15] Based on the evidence presented at trial, the jury could have reasonably concluded that Hayden intended to affect this pending federal criminal case in the Eastern District of Texas. To begin, Hayden knew that law enforcement officers from the Eastern District of Texas were looking for him. Kelly—a Texas DPS Special Agent—went to Hayden's parents' house in Atlanta, Texas, ROA.841–42, which is "down the street" from the courthouse where Hayden's trial occurred and also in the Eastern District of Texas, ROA.2203. There Kelly spoke with Hayden on the phone. ROA.841–42. During that call, Kelly told Hayden that he wanted to speak with him.[16] ROA.841–42. Then Hayden received a message from someone named Jeff Hayden. ROA.2723. Jeff Hayden

[15] In at least one setting—violations of 8 U.S.C. § 1326—this Court has concluded that the subsequent act of a government official completes the crime and thus confers venue. *See United States v. Compian-Torres*, 712 F.3d 203, 207 (5th Cir. 2013).

[16] Agent Kelly also told Hayden that the case had not yet been indicted. ROA.841–42.

asked, "What's going on, there was 2 state police and 1 sheriff here saying they had a federal indictment to place you into custody for methamphetamine . . . . This have anything to do with that other dude they arrested and maybe he said it was yours when you was not there?" ROA.2723. As Hayden put it, "now the feds hunting me." ROA.2242, 2722–23, 4308.

Next, Hayden knew that the drug conspiracy in which he was involved stretched across the Eastern District of Texas. Hayden and Harper worked together to sell methamphetamine to people Hayden knew from Shreveport, Louisiana, which is where Hayden grew up. ROA.1805–07, 2202. Once or twice a week for three months, the buyers travelled from Shreveport to Dallas and back to buy drugs from Hayden and Harper. ROA.1805–07. Harper told the jury that Interstate 20—which passes through the Eastern District of Texas—was the natural route from Dallas to Shreveport and back.[17] ROA.1805–07. Based on all this evidence, the jury could have reasonably concluded that Hayden

[17] The district court found that the fact of I-20 running through the Eastern District of Texas to connect Dallas, Texas, with Shreveport, Louisiana, was something about which the East Texas jury was "well familiar." ROA.2274.

intended to affect this pending federal criminal case in the Eastern District of Texas. *See Baldeo*, 615 F. App'x at 27.

In sum, the district court did not plainly err in determining that venue for the obstruction offense was proper—and supported by sufficient evidence—under 18 U.S.C. § 1512(i).

## II. HAYDEN DID NOT ACCEPT RESPONSIBILITY AND WAS THUS NOT ENTITLED TO A REDUCTION.

### A. Background and Standard of Review

Hayden argues that the district court should have granted him a two-level reduction for acceptance for responsibility. Br.48. The district court denied Hayden's request for the acceptance of responsibility reduction because it did "not believe that [Hayden] accepted responsibility." ROA.2398. In explaining its conclusion, the district court noted that Hayden fled from police, committed another crime while in pretrial detention, "clearly has expressed no remorse," and had not "ever acknowledged that his actions were really wrong." ROA.2394–98.

Section 3E1.1(a) of the Guidelines provides for a two-level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." Because of the district court's unique position in deciding the issue, *see United States v. Cabrera*, 288 F.3d 163, 175, 177 (5th Cir. 2002)

(per curiam), its determination "is entitled to great deference on review," U.S.S.G. § 3E1.1 Application Note 5. This Court has used different labels to describe the standard of review, but by any description it is "more deferential than a pure clearly erroneous standard." *United States v. Ragsdale*, 426 F.3d 765, 781 (5th Cir. 2005) (quotation omitted). This Court should defer the district court's conclusion because Hayden has clearly not demonstrated acceptance of responsibility for his offense.

**B. Hayden failed to admit all the elements of the offense.**

Only in "rare situations" will a defendant who opts for trial get credit for accepting responsibility. U.S.S.G. § 3E1.1 Application Note 2. One who goes to trial to dispute his factual guilt—rather than to contest the constitutionality or applicability of a statute, *id.*—"will not qualify" for the adjustment, *Ragsdale*, 426 F.3d at 782. As the relevant commentary puts it, "This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1 Application Note 2.

Hayden is not the rare defendant who should get a reduction even after a trial, because he disputed his guilt. Yes, he admitted some of the "underlying facts of obstruction of justice." Br.49, 51–52; *see also* ROA.2242–43. But Section 3E1.1 applies to a defendant who admits "the conduct comprising the offense(s) of conviction." U.S.S.G. § 3E1.1 Application Note 1(A). That requires a defendant to admit "all of the elements of the offenses of conviction." *United States v. Ochoa*, 521 F. App'x 328, 330 (5th Cir. 2013) (unpublished). In fact, the guidelines go a step further, requiring a defendant "to admit, or at least not to deny falsely, all relevant conduct." *United States v. Smith*, 13 F.3d 860, 866 (5th Cir. 1994).

Hayden concedes that he "did not admit . . . that his intent was to prevent Harper from testifying against him at trial." Br.53. But Hayden's intent was an element of the offense. The district court, without objection from Hayden, ROA.2273–74, instructed the jury that to find Hayden guilty they had to be convinced of the following:

> Second: That the defendant acted with intent to influence, delay or prevent the testimony of Timothy Harper in this case, an official proceeding.

ROA.2297–98. As he concedes, Hayden never admitted that he intended to influence, delay, or prevent Harper's testimony in this case.[18] And by failing to admit that he had the requisite intent, Hayden failed to admit the conduct comprising the offense of conviction.

### C. Hayden's conduct demonstrated that he had not accepted responsibility.

Hayden's conduct—from the time he learned law enforcement wanted to talk to him through his testimony at trial—demonstrated that he did not accept responsibility.

*First*, Hayden fled from law enforcement, which is inconsistent with acceptance of responsibility pursuant to Application Note 1(A) to guideline section 3E1.1. As the district court found, Hayden "was arrested in Florida in late June of 2017, four months after he became aware that the investigators were interested in talking to him." ROA.2396.

*Second*, Hayden continued his criminal conduct while he was in jail awaiting trial, which is inconsistent with acceptance of responsibility

[18] Hayden also failed to admit relevant conduct at trial, including that he offered to sell a cooperating individual six ounces of methamphetamine. ROA.4307.

pursuant to Application Note 1(B) to guideline section 3E1.1. Just a few months before trial, Hayden attempted to smuggle a cell phone into the jail. ROA.4310. After Hayden was moved to a separation cell, he armored himself with a blanket and brandished an 8.5-inch bolt, ROA.4310, which he had removed from the cage over the smoke detector in his cell, ROA.735, using a Jolly Rancher. Hayden then threatened to kill any jail staff that tried to come into the cell. ROA.4310. Hayden pleaded guilty to this conduct—which was the basis of Count Five—on the first day of trial. ROA.4306.

*Third*, Hayden lied to the government, which is inconsistent with acceptance of responsibility pursuant to Application Notes 1(B) and 4 to guideline section 3E1.1. While in pretrial detention, Hayden sent three letters to the prosecutor and the case agent. ROA.2942–54. In the letters, Hayden claimed that he wanted to "set the record straight." ROA.2942. He then described—in detail—a methamphetamine transaction he witnessed between Harper and Daniel Montes-Munoz, a codefendant who was in the apartment on the day of the bust. ROA.2942, 4307. He described how Harper and McLemore "were selling back n forth to each other" but had a "falling out because" of a "bad kilo." ROA.2943. He

described buying cocaine from McLemore. ROA.2943. And he claimed that he met someone from "Cartel de Gulfo" at a house near "Austin where they were pressing [pure coke] into blocks." ROA.2944. At trial, Hayden made statements that were inconsistent with what he said in the letters he admitted he had written. *E.g.*, ROA.2226. When challenged with his inconsistent statements, Hayden claimed the he had lied in the letters, describing them as "all bulls**t" he "was making up . . . trying to get released." ROA.2226–33.

*Fourth*, Hayden committed perjury during the trial, which is inconsistent with acceptance of responsibility pursuant to Application Note 4 to guideline section 3E1.1. The government filed a twenty-page sentencing memorandum and objection to the PSR in which it set out in detail how Hayden had obstructed justice by committing perjury at trial.[19] Sentencing Memo and PSR Objection by the United States, *United States v. Hayden*, No. 5:17-CR-9 (E.D.T.X. 2020), ECF No. 330. While the district court overruled the government's objection seeking the

---

[19] The government also argued that Hayden obstructed justice by placing super glue on his fingertips to prevent successful fingerprinting after the district court ordered him to allow his fingerprints to be taken. Sentencing Memo and PSR Objection by the United States at 14–15, *United States v. Hayden*, No. 5:17-CR-9 (E.D.T.X. 2020), ECF No. 330.

two-level enhancement under guideline section 3C1.1, its express basis for doing so was not a disagreement with the merits of the objection. The district court explained its rationale this way:

> I think . . . there are very compelling reasons to adopt [the government's] position and to increase the guideline range on the basis of an argument or a determination that the defendant committed perjury. . . . [N]o doubt [the government] correctly state[d] . . . the law as it relates to the ability of the Court to enhance a defendant's sentence on the basis of perjury or other obstruction in a trial. . . . . And [the government] put forth some fairly strong examples that would lead a reasonable person to conclude Mr. Hayden had not told the truth on the stand.
>
> Putting that aside, I don't think it's necessary to go through that analysis here, and I'm not going to do that, in large part, as [Hayden's counsel] says, because the jury did hear it. . . . And for reasons that we do not know, . . . they returned [a mixed] verdict. . . . And . . . the fact is, . . . if the government is convinced that perjury occurred here, it always

> has the available remedy of presenting its evidence to another Grand Jury and seeking an indictment for perjury. . . . [G]iven the unusual circumstances of the case and the fact that we've got a mixed verdict,[20] the fact that the government does have a remedy here, I'm going to decline the government's invitation on this ground and accordingly will overrule its objections.

ROA.2490–93. In short, while the district court declined to impose the enhancement it acknowledged that there were "very compelling reasons" to conclude the Hayden had lied on the stand. ROA.2491.

In sum, this Court should defer to the district court conclusion that Hayden did not accept responsibility.

[20] In reaching its ultimate sentencing decision, the district court was careful to ensure that Hayden "receive[d] some benefit" from the his "partial[] acquit[al]," noting that "it seems unfair to me for the jury to make a determination about what the defendant's conduct as proven by the government beyond a reasonable doubt was, and then have a complete redetermination of all of that under the preponderance-of-the evidence-standard." ROA.2394–95.

## CONCLUSION

Accordingly, this Court should affirm the district court's judgment.

Respectfully submitted,

NICHOLAS J. GANJEI
Acting United States Attorney
Eastern District of Texas

*s/Jonathan R. Hornok*
JONATHAN R. HORNOK
Assistant United States Attorney
500 State Line Ave. N., Suite 420
Texarkana, Texas 75504
(903) 792-8453

## CERTIFICATE OF SERVICE

I certify that the foregoing Brief for Appellee United States was this day electronically served on counsel for appellant Hayden through use of the Court's ECF system.

**DATED: FEBRUARY 26, 2021**

*<u>/s/Jonathan R. Hornok</u>*
JONATHAN R. HORNOK
Assistant United States Attorney
500 State Line Ave. N., Suite 420
Texarkana, Texas 75504
(903) 792-8453

**CERTIFICATE OF COMPLIANCE**

In accordance with FED. R. APP. P. 32(g), I certify that the foregoing Brief for Appellee United States was prepared in a 14-point, proportionally spaced, serif font (Century Schoolbook), with footnotes appearing in 14-point type; the brief was drafted in Microsoft Word, Office 365; the brief contains 5,990 words, as counted by Microsoft Word and excluding the parts exempted by FED. R. APP. P. 32(f); and, accordingly, the brief complies with FED. R. APP. P. 32(a)(7)(B).

*/s/Jonathan R. Hornok*
JONATHAN R. HORNOK
Assistant United States Attorney
500 State Line Ave. N., Suite 420
Texarkana, Texas 75504
(903) 792-8453